FILED  1st JUDICIAL DISTRICT COURT
Rio Arriba County
4/28/2021 5:13 PM
KATHLEEN VIGIL CLERK OF THE COURT
Liliana Villalobos

**STATE OF NEW MEXICO**
**FIRST JUDICIAL DISTRICT COURT**
**COUNTY OF RIO ARRIBA**

**JAYE PHILLIPS,**

      **Plaintiff,**

                              Case assigned to Mathew, Francis J.
**v.**                             **NO.** D-117-CV-2021-00139

**PILOT CORPORATION, Inc.,**
**A Foreign Corporation, and**
**PILOT TRAVEL CENTERS, LLC,**
**A Foreign Corporation,**

      **Defendants.**

### COMPLAINT FOR PERSONAL INJURY

Plaintiff Jaye Phillips, by and through counsel Egolf + Ferlic + Martinez + Harwood, LLC (Kate Ferlic and Brian Egolf) and The Mandell Law Firm (Robert Mandell, *pro hac vice* pending) brings this complaint against the Defendants for injuries suffered as a proximate result of their negligence and conduct giving rise to punitive damages.  As grounds for this complaint, the Plaintiff states the following:

### PARTIES, VENUE, AND JURISDICTION

1.      Jaye Phillips was, at all times relevant to this complaint, a resident of the State of California.

2.      Pilot Corporation, Inc. was, at all times relevant to his complaint, a Tennessee corporation in good standing with a registered agent in Rio Arriba County, New Mexico.

3.      Pilot Travel Centers, LLC was, at all times relevant to his complaint, a Tennessee corporation in good standing with a registered agent in Rio Arriba County, New Mexico.

4.      The acts and omissions giving rise to this complaint took place in Lea County, New Mexico.

5.      Jurisdiction in this Court is proper pursuant to NMSA 1978, § 38-3-1(F) (1988).

6.     As a Court of general jurisdiction in New Mexico, this Court has jurisdiction in this matter.

## FACTS OF THE CASE

7.     This case arises from actions and omissions of the Defendants, their agents, and employees that occurred on June 24, 2019.

8.     On June 24, 2019, Mr. Phillips stopped at Pilot Travel Center No. 557 in Hobbs, New Mexico to purchase refreshments during a work-related trip from Florida to his home in California.

9.     At all times relevant to this complaint, the Defendants were owners and operators of the store, including the land surrounding the store ("the Premises"), who had complete and total control of the Premises as co-owners, partners, principal-agent, or some other relationship that made each of the Defendants liable for the acts and omissions of the other.

10.     As Mr. Phillips approached the store's front door, he noticed an employee of the Defendants operating a dolly carrying several bags of ice.

11.     Because the employee was standing near to a large icebox, Mr. Phillips concluded that the employee was about to place the bags of ice cubes into the icebox for sale to customers.

12.     Mr. Phillips passed the employee and the icebox to reach the store's door and enter the store.

13.     The store's entrance had two sets of doors at the entry.  To enter the store, one passes through the first set of doors, through a small entryway that is carpeted, and through a second set of doors to enter the store.

14.     Mr. Phillips opened the first set of doors into the store, passed over the carpeted area, then opened the second set of doors.

15.     As Mr. Phillips stepped over the threshold of the second doorway, he stepped onto many ice cubes that were on the floor immediately inside the threshold.

16.     Mr. Phillips did not see the ice cubes on the ground before stepping down on them.

17.     On information and belief, employees, agents, or contractors of the Defendants dropped the ice onto the floor and/or failed to clear ice.

18.     Employees, agents, or contractors of the Defendants failed to warn Mr. Phillips of the dangerous condition that existed inside the second doorway.

19.     Employees, agents, or contractors of the Defendants failed to properly maintain the interior of the store in a safe manner and condition.

20.     When Mr. Phillips stepped on the ice cubes, his foot immediately shot forward.

21.     Mr. Phillips's body fell down and backwards as his foot shot forward.

22.     Instinctively, Mr. Phillips reached his left hand backward to break his fall; his hand hit hard on the ground and sent pain up his arm into his shoulder.

23.     A tremendous amount of force and strain was placed on Mr. Phillips's shoulder, which caused serious injuries.

24.     Immediately after the incident, Mr. Phillips felt pain in his left shoulder, upper chest, neck, and lower back.  He decided to continue his trip home in hopes that the pain would subside.

25.     Rather than subside, the pain worsened, and on June 27, 2019, Mr. Phillips visited a physician in the health clinic at his workplace.

26.     The physician noted left back and left shoulder strain and ordered cold compresses for 20 minutes as often as practical, ibuprofen, stretching/range of motion exercises, and instructions to follow up in a month.

3

27.     Mr. Phillips followed his doctor's orders and returned for follow-up visits on July 29, 2019 and September 12, 2019.

28.     Mr. Phillips's condition was worsening, and his physician noted popping with abduction and flexion of the shoulder.  The physician ordered an MRI of the left shoulder and referred Mr. Phillips to physical therapy.

29.     Mr. Phillips began physical therapy on September 18, 2019.

30.     The physical therapist noted that Mr. Phillips was suffering from decreased range of motion, decreased left shoulder muscle strength, and increased neural tension of the left upper extremity.  Mr. Phillip's treatment consisted of stretching, strengthening, manual therapy, education, and modalities to increase range of motion, strength, and function and to decrease pain.  Mr. Phillips continued therapy through January 20, 2020.

31.     On September 28, 2019, Mr. Phillips underwent an MRI of his left shoulder, which was positive for moderate grade partial thickness predominately intrasubstance tear/strain at the supraspinatus/infraspinatus junction near the critical zone and low grade insertional partial thickness tear of the anterior supraspinatus tendon fibers at the footprint, moderate subscapularis tendinosis with low grade fraying of the upper fibers near the footprint, a 4 mm posterosuperior paralabral cyst with probable adjacent tear, not well assessed given lack of joint fluid, and enthesopathic cysts and edema at the anterior greater tuberosity with mild overlying subacromial/subdeltoid bursitis.

32.     The results of the MRI prompted Mr. Phillips's workplace physician to refer Mr. Phillips to outside physicians.  The referral led Mr. Phillips to enter the care of orthopedic specialists.

4

33.     Mr. Phillip's orthopedic specialists noted continuing worsening of Mr. Phillips's condition.  They attempted treatment with injections of cortisone but eventually concluded that Mr. Phillips would require surgery.

34.     On June 5, 2020, Mr. Phillips underwent surgery to repair a left shoulder superior labral tear.

35.     Following a successful surgery, Mr. Phillips underwent physical therapy from June 19, 2020 to November 25, 2020, the date on which his doctors concluded he had reached maximum medical improvement.

36.     Despite attaining maximum medical improvement, Mr. Phillips continues to suffer pain from the fall.

37.     Prior to the fall, Mr. Phillips was active, energetic, and independent.

38.     Mr. Phillips was a very active, vibrant man who enjoyed life and was self-sufficient.  He had always taken pride in himself and his surroundings, but after the fall he had to depend on others for activities for daily living.

39.     As a result of his injuries, Mr. Phillips had to rely on his wife to do the majority of the household activities, including caring for their children.  That has caused a great deal of stress and anxiety for both Mr. Phillips and his wife and has impacted his marriage.

40.     As a direct proximate result of the fall, Mr. Phillips has suffered lost wages due to missing twenty-one weeks of work.

41.     The persistent limitations suffered by Mr. Phillips's are significant.  Mr. Phillips was a physically active man who enjoyed spending time with his family and friends.  He particularly enjoyed playing soccer, wrestling, bike riding, skateboarding, swimming, kayaking, and boogie boarding with his children, playing golf with his father and brother, and restoring and maintaining cars.  However, after the fall, he was unable to participate in these activities.  The

5

inability to be physically active and spend time with his family has caused emotionally difficulty for Mr. Phillips.

## COUNT ONE: NEGLIGENCE

42.     At all times, the Defendants owed a duty of care to Mr. Phillips to keep their Premises free from dangerous conditions.

43.     At all times, the Defendants owed a duty of care to Mr. Phillips to properly supervise their employees, agents, and contractors.

44.     At all times, the Defendants owed Mr. Phillips a duty to act reasonably in maintaining the Premises in a reasonably safe condition in view of all the circumstances, including the likelihood of injury to another, the seriousness of the injury, and the burden of avoiding the risk.

45.     At all times, the Defendants owed Mr. Phillips a duty to safeguard him from dangerous conditions of which the owner or occupier could reasonably anticipate would cause harm to visitors.

46.     The Defendants breached their duty to Mr. Phillips by failing to maintain the Premises in a safe condition.

47.     The Defendants breached their duty to Mr. Phillips by failing to supervise their employees, agents, and contractors.

48.     The Defendants breached their duty to Mr. Phillips by failing to ensure that warnings were provided to customers about the dangerous condition in the Premises.

49.     The Defendants breached their duty to Mr. Phillips by failing to clear the Premises of dangerous conditions.

50.     The Defendants breached their duty to Mr. Phillips by failing to foresee that someone would be hurt by the presence of ice on the floor of their store.

51.     The Defendants' breach of their duties to Mr. Phillips directly and proximately caused the damages set forth in this complaint.

52.     The Defendants' breach of their duty of reasonable care caused the Plaintiff to suffer permanent and non-permanent injuries to his body, health, strength and ability to participate in activities.

53.     As a further direct and proximate result of the negligence of the defendants and each of them, plaintiff has sustained personal injuries, a portion of which are permanent in nature.  Such injuries have impaired plaintiff's ability to work, and he was prevented from attending to his usual occupation.  Plaintiff suffered an impaired capacity to perform in his job, which will persist into the future.

54.     As a further proximate result of the negligence of Defendants, Plaintiff has incurred damages for medical expenses and other damages in an amount to be determined at trial.  As a further, direct and proximate result of the negligence of Defendants, and each of them, Plaintiff has lost earnings and will lose earnings in the future, in an amount to be determined at trial.

## COUNT TWO: PREMISES LIABILITY

55.     At all times relevant to this complaint, Defendants were the owners, operators or lessors of certain Premises located at 3710 W. Carlsbad Hwy, Hobbs, New Mexico, also known as Pilot Travel Center No. 557.

56.     The Defendants knew or should have known that a dangerous condition existed on the Premises.

57.     At all times relevant to this complaint, a dangerous condition existed on the Premises, of which Defendants had knowledge or should have had knowledge, and that as a

7

direct and proximate result of this dangerous condition, Plaintiff was caused to fall and sustain injury, through no fault of his own.

58.     As a proximate result of the said breaches of Defendants, Plaintiff has incurred damages for medical expenses and other damages in an amount to be determined at trial and will incur future medical expenses.  As a further, direct and proximate result of the said breaches of Defendants, Plaintiff has lost earnings and will lose earnings in the future, in an amount according to be demonstrated at trial.

## COUNT THREE: PUNITIVE DAMAGES

59.     Due to Defendants' reckless disregard for Plaintiff Phillips' safety and welfare, punitive damages are appropriate.

60.     The conduct of Defendants in this matter was willful, reckless, and wanton.

61.     The cumulative conduct of the Defendants and/or their employees, agents, and contractors taken together demonstrate a willful, reckless and wanton state of mind.

62.     Defendants negligently failed to ensure the safety of visitors with basic safety features which are seen in virtually every public place of commerce.

63.     Defendants created a dangerous environment where grievous physical injury was likely and probable.

WHEREFORE, Mr. Phillips respectfully asks the Court to enter judgment in his favor against Defendants in an amount sufficient to compensate for his losses, including medical expenses, past and future; nonmedical expenses; the nature, extent, and duration of Plaintiff's injury; pain and suffering, past and future; physical and mental anguish; loss of enjoyment of life; loss of household services; the value of lost earnings and the present cash value of earning capacity relatively certain to be lost in the future; lost income; as well as any other relief the Court deems just and proper.  Plaintiff also respectfully asks that the Court find Defendants

liable for punitive damages, pre-judgment, and post-judgment interest to the fullest extent allowable, and for any other relief deemed just and proper.

Respectfully submitted,

EGOLF + FERLIC +
MARTINEZ + HARWOOD, LLC

/s/ *Kate Ferlic*
Kate Ferlic
Brian Egolf
123 W. San Francisco St., Second Floor
Santa Fe, NM 87501
(505) 986-9641
Kate@EgolfLaw.com
Brian@EgolfLaw.com

and

Robert Mandell
The Mandell Law Firm
5950 Canoga Ave., Suite 605
Woodland Hills, CA 91367
(818) 886-6600
rob@Mandelltrial.com
*Pro Hac Vice Pending*

*Attorneys for Plaintiff*

9